The first argued case this morning is No. 1914-37, ProMOS Technologies, Inc. v. Samsung Electronics. Mr. Kaufman. Good morning, Your Honors. May it please the Court. This appeal presents two issues of patent. The first issue is the term, the construction of the term, first dielectric layer. And that, as used in the claims and described in the specification, should be construed to be a single layer of material. The Board erred when it concluded that it could be multiple layers of material. The second claim construction issue is construction of the term forming a first dielectric layer on the surface and exposing a portion of the surface of the substrate. And really, that's a question of what the surface of the substrate is. And the key point there is that the surface is that of the silicon wafer and not any intervening layer as explained in the prosecution history of the original 027 patent. Can I start with the second one? Of course, Your Honor. Of course, you're going to say yes. I tend to think you might be right that that construction is a little wonky. But even if it is, does it really matter? I would submit it does, Your Honor, because the substrate, the material in Koyama. So for the second issue, it's a question of does Koyama anticipate the claimed invention. What Koyama has is it has the silicon wafer substrate. And then formed on top of that is a metal silicide layer on top of the gate. And we would submit that the substrate is the silicon wafer. And thus, if there is a silicide layer on top of that, when you are exposing the substrate and you're exposing the silicide, sorry, you're exposing the silicide layer, you are not exposing the substrate because that's a separate layer on top of the substrate. And so we would submit, Your Honor, that given our construction, you are not exposing the first dielectric layer on the substrate. You're forming it on an intervening layer. But the board made a factual finding that Ono's composite layer is formed directly on the substrate. And so what do we do with that? So in other words, the whole concern about the indirect versus direct, it seems to not matter given the prior art that they relied on. So there are two issues here. So for Ono, you're correct. The layer 21 of Ono is formed directly on the substrate. But Ono does not teach a first dielectric layer as claimed. So Ono goes into the point that you were trying to make. Right. So yeah. So there's Ono and Koyama, two anticipatory references. For Ono, the key issue is whether a layer can be more than one, whether the first dielectric layer can be more than one layer. For Koyama, it's whether the first dielectric layer is formed directly on the substrate. And so yes, I would agree, Your Honor, that layer 21 as described in Ono is formed directly on the substrate, and we haven't argued the contract. Okay. So what you're saying is that both of those concerns you have sort of have to come together in order for this to matter. I have to win both to win. There's nothing, you know, I can't, I can't partially win. So either the court has to find, as it should, that the board erred in both constructions, or I don't like it. There's not a, there's not a baby to display here. Okay. Okay. So then there's no dispute as to the underlying facts, but the dispute is the breadth with which they're applied? That's correct. Yes. This is strictly, this is strictly claim construction, Your Honor. There's no dispute as to the underlying structures that are described in the prior art. Okay. But so you would agree, for instance, that Koyama, if we were to find that it, that two different aspects of a substrate could constitute one substrate, I guess, is that the way you would, you wouldn't phrase it quite that way. But if we would agree with the board who found that, then the first construction does, then the problem of on the surface doesn't matter. Right. If you were to conclude that the silicide layer was part of the substrate, then, then the surface of the silicide layer would be the surface of the substrate. We would contend that the silicide layer is not the surface of the substrate, but that the silicon wafer, the substrate, is in fact the surface of the substrate. And so that's what we would contend there. Okay. Go ahead. I really, we should start that rule, that two-minute rule that the Supreme Court does. I'm happy to go wherever, this is your time, I'm happy to go wherever you want to go and resolve any questions that you have. Turning back to the first issue, so the invention described in the 027 and ultimately claimed is an improved method of etching and forming a contact for semiconductor processes. And one aspect of it, an important aspect of it, is that it reduces the number of etches to which the substrate is exposed, thus reducing damage to the substrate from the etching process. And it does that by first applying the first dielectric layer, which is either silicon nitride or silicon oxynitride, then a second dielectric layer is applied over that, that is silicon oxide as described in the specification. Some etching occurs, and then a third dielectric layer is applied on top of both the first and second dielectric layer, and then ultimately that is etched to form the contact. And the specification uniformly describes a single layer, or a single material, as the layer for each dielectric layer. There's no discussion in the specification of any combination of materials being used in an individual layer. So we would submit that the invention as described in the spec is reflected as a single layer. We are cognizant of this court's precedent that A, has a presumption that it normally means one or more than one, but we think that we fit within the exception as described, for example, in the Norian case that we cited in our brief. The argument that your friend on the other side is certainly going to stand up and make, as I understand from their briefs, is that it's not two layers, it's a composite layer. What's your response to that? My response to that is, if it's a composite layer of two different materials, so if it's a composite layer of silicon nitride and silicon oxide, that's no different than it being two layers of silicon nitride or silicon oxide. There's no disclosure in the 027 patent of a composite layer. The only discussion of that comes from their expert relying only on extrinsic evidence. Did anybody ask for the term substrate to be construed in this proceeding? I'm sorry, we're talking about the first and second dielectric layer. Yeah, I'm sorry, the dielectric layer to be construed. Yeah, we asked for construction of the first dielectric layer and the board construed it as including the possibility of two layers, whether you call them sub-layers or whether you call them two layers. But what do we do with the fact that one of the ways they got there was through the expert testimony? That we have to defer to, right? The expert testimony is extrinsic evidence that it relies solely on extrinsic evidence. So the expert testimony is not an explanation of anything that's in the 027 patent, but it's the expert testimony at 1703 and 1704 of the appendix talks about what Ono describes. So the expert comes in and says, well, I know that it can be multiple layers because, for to invalidate the patent here, teaches two layers on the substrate, a first an oxide layer and then a nitride layer, which is indeed the very layer that I'm alleging is anticipatory. And then they cite a PROMOS patent that's not at issue here, which has a completely different structure and has a gate structure where the claim in that compound specifically says a layer comprised of a first, you know, and then it describes several layers of dielectric material. So certainly there are contexts where, in the art, where a dielectric layer can have multiple layers. But in the context of the 027 and particularly the intrinsic record of the 027 patent, the only discussion is of a single material. And we think that should control and we think that the board erred when it went outside. But I don't really read his expert testimony quite as narrowly. I mean, he doesn't say that Ono is the only reason that one of skill in the art would have understood that you could have composite layers. I think he gets to the point we're supposed to be seeking to determine, which is what would one of skill in the art glean from this patent? I would disagree with that only in the sense, Your Honor, that there's no reference in his paragraph three at 1703 and 1704 of the patent at issue in terms of any specific example of a multiple layer in the 027. You know, he does talk generally, and then he supports that by citing to his prior art and then to another PROMOS patent. He doesn't point to the specification or file history and says, there's some wiggle room here in the spec that supports my notion that the first dielectric layer can include multiple layers of material. And so your prior art PROMOS patents that actually talks about a combination layer, you think is just going to something so unrelated that the board shouldn't have looked to it? No, I'm not saying that the board shouldn't have looked at it. I'm saying it's a different context. And if we read from claim one of the 897 patent at appendix 1723, the portion that Dr. Rubloff relied on, we have a second dielectric layer comprising a first layer of high temperature oxide in contact with a first buffer layer, a layer of silicon nitride on the first layer of the high temperature oxide, and a second layer of high temperature oxide on the layer of silicon nitride. And so you have something that's defined as a, quote, second dielectric layer, but then in a gate, and then it recites three specific layers. So there's actual recitation of different layers in the larger context of that claim drafting choice for that particular structure, which is different from the structure here. OK, so as I understood it, you conceded that layer could conceivably be multiple layers, that you're really saying that this patent, the intrinsic evidence, defines layer more narrowly. Right. In the context of this invention, layer is more narrowly than just the abstract layer, which can include, you know, including different materials. In this context, the layer is a single material. And that's what we're saying based on the intrinsic record. And very briefly, because I'm just about into my rebuttal time, on the second issue with respect to Koyama, the key point is that the claims were rejected over shields with a structure that showed an oxide layer between the first dielectric layer and the substrate. And at the time the claims read forming layers on a material, the claims were amended to include the word substrate and replace that material. And that amendment and the accompanying argument is sufficient, we believe, to require exposing the substrate. Unless there are any questions, Your Honors, I'm into my rebuttal time, and I'd like to move to Mr. Modi. Thank you, Your Honor. Good morning. May it please the Court. In finding the claims unpatentable based on two separate and independent grounds, the Board correctly construed the claims, carefully evaluated the parties' arguments and evidence, and vetted the testimony of Samsung's expert over policy. I have to say that I do have a problem with the on-the-surface limitation, as I hinted. I just don't understand how, when you look at the prosecution history and the full intrinsic record here, you can come away with any conclusion other than that there was at least a portion of the on-the-surface limitation that was, I don't know whether you'd call it disclaimed or given away very clearly in connection with the back and forth with the examiner. And you try to say, well, maybe you could read that differently, but it's pretty logical that you can only read it one way. So what do you do with the conclusion that, perhaps, I at least might disagree with your on-the-surface limitation being improperly construed? Sure, Your Honor. I can start with that. Or properly construed, I'm sorry. So we believe it's irrelevant to the parties' dispute, that particular claim construction issue, because the board made a factual finding, and I was actually going to start with the Cuyama issue. The board made a factual finding here that the first dielectric layer, it's the etching stopper layer in Cuyama, is directly on the surface of the substrate. And I think that's fatal to PROMAS' arguments on appeal. So even if this court were to disagree on the on-the-surface construction, we do believe the factual findings made by the board with respect to Cuyama. And if I could turn to those and address those, I think that really disposes of this appeal, and I don't think the court needs to get to any of the other issues. I mean, I think that goes to what I commend your friend on the other side for, which is logical concession, which is they have to win both construction arguments in order to prevail. And I'm saying I think you might win one, or at least for me. So what does that matter? How does that matter? Right, and I don't think it matters, as Your Honor is hinting at. So if we actually look at Cuyama and look at the evidence that the board looked at, and I think my colleague here, he said, if the silicide layer is found to be part of the substrate, then the claim should be, the board's decision should be upheld. And I think we should look at the board's decision with respect to Cuyama on that point. And if I could have the court look at Appendix 54, and that's the board's final decision. So basically, the issue with Cuyama is that what is, where is the silicide layer? Is it part of the substrate, or is it some other layer that's not part of the substrate? And here on Appendix 54, the board looked at the testimony of it looked at the testimony of PROMAS' expert, Mr. Maltiel, and rejected the testimony of Mr. Maltiel. And you can see that here. They said, to the extent there is conflicting testimony, and I'm reading from Appendix 54, the last paragraph. To the extent there is conflicting testimony between Dr. Rubloff and Mr. Maltiel regarding whether etching stopper film 43 is formed on the semiconductor substrate, we credit the testimony of Dr. Rubloff over that of Mr. Maltiel. The board didn't stop there. There's additional factual findings the board made. So if you can go to Appendix 55, and I think this is the key to this issue. So after the board looked at, looks at the testimony at Appendix 55, right below the block quote, it says, for the foregoing reasons, we find that silicide layer 21 in the source and drain region four in Cuyama is a part of semiconductor substrate one. And we think that's fatal to their argument. That's a factual finding the board made. They don't really even appeal that finding. Substantial evidence more than supports that finding. So we think the board, this court can affirm the Cuyama ground, and if it does that, the board's decision should be affirmed. Unless the court has any questions on this issue, I can turn to them. And do you rely on the board's conclusion that this is because there's a chemical reaction with the silicon? Yes, Your Honor, that is part of the finding that the board made, and you're absolutely right. The board at Appendix 53 and 54, again, they said, they credited the cogent and persuasive testimony of our expert, and they said it was unrebutted. And they said the silicide, it's formed by the chemical reaction between the metal film and the silicon within the source and drain regions of the substrate. So, and if you compare the 027 patent, what's exposed in the 027 patent, if you look, is really the source and drain region, and that's exactly what's exposed in Cuyama. It's just an enhanced source and drain region because of the silicide that's been added. And the board made a factual finding here that Your Honor pointed to, that that's a chemical reaction within the surface of the substrate, and I think that's fatal to the argument. They really don't have any challenge to that on appeal. So unless the court has any questions on the substrate, I'll turn quickly to the ONO issue. So with respect to the ONO issue, I think Judge O'Malley, your questions got to this issue. The board made a factual finding based on the extrinsic evidence, based on our expert's testimony and other literature, including their own patent, the 897 patent, based on the ONO reference. And I heard Mr. Kaufman say that the board actually didn't, Mr. Dr. Rublev did not actually cite to the 027. He did cite to the 027 patent, and I'll point to that in a minute. But the point here is that the board looked at the testimony of Samsung's expert and all this other evidence in finding that the plain and ordinary meaning of a dielectric layer is a composite layer, and it is not, or it certainly includes a composite layer, and it is not limited to a single layer of a single material. But these findings are not disputed on appeal, is that correct? That's right, Your Honor. But in terms of the application of the claims to these findings, your view of that would be helpful. Sure, Your Honor, I can go to that. And that's, again, if you look at Appendix 32, and Judge O'Malley, this also gets to the question that you asked, and I think if you can look at Appendix 32, which is the board's final decision, and Judge Newman, I think this will get to the question you asked. Again, the board, after it construed the claim, it said, look, a layer, a dielectric layer, based on the intrinsic evidence in the plain and ordinary meaning, includes a composite layer. It then evaluated the evidence from both sides and agreed. Again, they credited the testimony of Samsung's experts. So at Appendix 32, the board says, right in the middle of the page, instead, we credit this testimony of Dr. Rublev, which said both layers, so 21 and 22, serve a common purpose of protecting the gate electrodes and source-slash-strain regions as they can be seen. The board didn't stop there. It went on and said, we also credit Dr. Rublev's testimony that both layers, 21 and 22 of ONO, are made of dielectric material. The board went on. What about, I mean, the board seems to reject this, but with not a lot of discussion. I mean, the petitioner argued that, I'm sorry, the patent holder argued that these layers serve different functions. And why doesn't that matter in terms of determining whether it's a single layer versus... So the reason it doesn't matter, Your Honor, is because the board made a factual finding, right? Because that gets to the point of what in ONO is a first dielectric layer that's claimed, right? And the board here made a factual finding. It rejected the arguments PROMAS made, and you can see it. The board said, we credit Dr. Rublev's testimony that both layers, 21 and 22 of ONO, are made of dielectric layer. They both collectively constitute a first dielectric layer. It went on and said they serve the same purpose of protecting the gate electrodes and source and drain regions. And therefore, they collectively constitute the first dielectric layer. Those are factual findings made by the board based on the evidence, and they're entitled to deference. So you can still have one layer, even though the sublayer would actually perform different functions and have different properties? Certainly, Your Honor, because what could happen is a layer and the sublayers could perform more than one function. And here, what the board found, again, as I pointed to in Appendix 32, and if you look at the pages surrounding that, the board said, well, there could be certainly other functions. And there was testimony on that point. Again, the board credited Dr. Rublev's testimony over Mr. Maltiel's testimony on that point. It's a factual issue. The board is entitled to deference on that issue. So turning quickly to the evidence, and I think the 897 patent, Your Honor, the discussion you had with counsel for PROMAS, is telling because it does show us that a dielectric layer certainly can be composed of more than, it's a composite layer, as claimed in the 897 patent. And then ONO, of course, does that. And then they made the point that nothing in the 027 patent supports that showing, and they pointed to Dr. Rublev's testimony. I want to just look at that real quickly. So if you look at, and it was Appendix 1703 to 1704. I believe, Judge O'Malley, you were looking at that testimony earlier. Yes. And that's the testimony of our expert, Dr. Rublev. And I think the other thing I would like to mention is PROMAS did not come forward with testimony on the plain and ordinary meaning. So again, the board looked at the testimony and gave it a lot of credit. So if you look at Paragraph 3 on Appendix 1703, Dr. Rublev starts with saying, in my opinion, a person of skill in the art would understand that the plain meaning of layer or dielectric layer is not limited to a single layer of single material. And then he cites to Exhibit 1002, Paragraph 67. That's his opening declaration. And if you actually look at that, you'll see he actually discusses the 027 patent. And he talks about Claims 2 and 3 of the 027 and how those claims support his plain and ordinary meaning, his understanding of what the plain and ordinary meaning of the term is. And I can give you a citation to that, Judge O'Malley, if you like. And that's Appendix 278. So here, Dr. Rublev looked at not only at the 027 patent, he looked at PROMAS' other patents, he looked at the prior art. And collectively, based on all of that, he provided his opinion that based on his experience and all of this evidence that a dielectric layer certainly is not limited to a single layer of a single material. So Judge O'Malley, and Your Honors, unless you have any other question, I do want to go back to the on-the-surface issue. Okay. Just for a couple minutes. Okay, go ahead. Okay. Good luck. I'll make it quick on that. From our perspective, the on-the-surface, they do not meet the exacting standard of clear and unmistakable disclaimer. They certainly could have amended the claims to reside in contact with or direct. And the terms that we're talking about today, on-the-surface, layer, these are some of the most fundamental terms in semiconductor processing. If you look at semiconductor processing patents, you'll see these terms all over the place. So it's not like PROMAS didn't know that there would be a dispute over it. They certainly could have amended it. We just believe the statements they have. Well, that's precisely though why the examiner rejected the original formation of the claim that said on the surface of a material and said it had to be on the surface of the substrate. But I mean, yes, it's normal in this part, but that's exactly why the examiner said it's obvious or anticipated if you don't make this change. Right. So, Your Honor, I disagree. I don't think the examiner went that far. Our issue is as a reasonable competitor, we're entitled to notice. Their whole argument on the surface is they said, look, if you look at the prosecution history, it's only one page. They made an amendment and then we have one page. From our perspective, looking at this court's case law and applying it, this is not a clear and unmistakable disclaimer. They could have amended the claims at that point to recite direct contact or in contact with. They could have amended the claims during the IPR proceeding below. They didn't do either of those. But as we discussed before, it's irrelevant to the disputes here. Sometimes when I see these kinds of issues, I like to say, what if we were looking at this in the reverse and they were trying to claim that they covered more and they could cover this indirect and it was an infringement issue. I'm betting you'd be standing here saying this was a clear and unmistakable disclaimer. We very- That would be your job, okay. So unless the court has any other questions, we request that the court affirm. Okay, thank you. Mr. Kovner. Your honors. Briefly, just to respond to a couple of points that my learned friend made. With respect to Dr. Rubloff's testimony, he pointed to paragraph 67 of Dr. Rubloff's original declaration. Nothing there identifies any intrinsic evidence that shows multiple sublayers in the 027 patent. All that is is a reference to dependent claims two and three, which recite the specific materials that can be the first dielectric layer. So for example, the specification says the first dielectric layer can be selected from silicon nitride or silicon oxynitride and unsurprisingly, there's a dependent claim where the first layer is silicon nitride and there's a second dependent claim where the layer is silicon oxynitride. So it's just standard claim drafting that specifies a particular material identified in the specification. What about the board's finding that there was a chemical reaction between the two layers? So if we look at paragraph 38 of Koyama, which describes the formation of the silicide, yes, I mean, that's what is described. The Koyama at paragraph 38, I'll pull the appendix site here for just a moment, describes the formation of the silicide layer and it's a layer of metal, a metal film is formed on top of the source and the drain and then as heat treated to form the silicide and then the silicide layer is etched off except over the source and the drain. So you have a silicide layer that is formed on top of the substrate. And so if the substrate is the silicon wafer, then the silicide layer is something that is formed on top of it and is not part of the substrate. If the substrate is the silicon wafer plus chemical reactions in the surface and that's the construction, then the silicide layer is part of it. But we would submit that under a correct construction, Your Honor, that the silicide layer is not part of the substrate and thus the presence of the silicide layer is fatal to their anticipation argument. Unless there are any further questions, Your Honors. Thank you. Okay. Thank you. Thank you both. The case is taken under submission.